**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMEECH RAWLS, | ) | |
| | ) | Civil Action No.  2:16-cv-1438 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MR. GIBBS, *Kitchen Staff Member,* | ) | |
| *SCI Greene*, MICHAEL GUYTON, | ) | ECF No. 107 |
| *Unit Manager, SCI Greene*, ROBERT | ) | |
| D. GILMORE, *Facility Manager, SCI* | ) | |
| *Greene*, MR. CUMBERLEDGE, | ) | |
| *Safety Manager, SCI Greene*, | ) | |
| CAPTAIN DURCO, *Security, SCI* | ) | |
| *Greene*, MICHAEL ZAKEN, *Deputy* | ) | |
| *Superintendent*, TRACY SHAWLEY, | ) | |
| JAYME GARDNER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Sameech Rawls ("Plaintiff") is an inmate in the custody of the Pennsylvania

Department of Corrections and currently confined at the State Correctional Institution at Greene

("SCI-Greene").  He initiated this action with the filing of a Motion to Proceed *in forma pauperis*

on September 19, 2016, and his Complaint was docketed on November 30, 2016.  (ECF Nos. 1,

7.)  Pending before the Court is a Motion for Summary Judgment.  (ECF No. 107.) For the

reasons set forth below, the Motion will be granted.

After his Complaint was filed, this case was twice dismissed for Plaintiff's failure to

prosecute, once on June 29, 2017, and again on February 12, 2019. On each occasion, it was

reversed and remanded by the Third Circuit Court of Appeals.  (ECF Nos. 26, 43, 52, 65.)

Plaintiff filed an Amended Complaint on February 26, 2019, into which he incorporated his

1

original Complaint and also added several new Defendants.[1]  (ECF No. 54.)  In his Amended

Complaint, Plaintiff alleged that Defendants, both current and former officials and correction

officers/employees at SCI-Greene violated his rights under the First and Eighth Amendments to

the United States Constitution and were liable under Pennsylvania law for intentional infliction

of emotional distress.  Plaintiff's claims against the Defendants were premised on his alleged

inappropriate placement in a top bunk and subsequent injury he sustained after falling out of it in

September 2014 and also alleged sexual assaults that occurred during pat-down searches

conducted when he was a kitchen worker in October 2015.  (ECF Nos. 7, 54.)

In response to the Amended Complaint, Defendants submitted a partial Motion to

Dismiss, which was granted in part and denied in part.  (ECF Nos. 82, 95-96.)  The Court

permitted Plaintiff's Eighth Amendment deliberate indifference claim to proceed against

Defendants Guyton and Gilmore premised on Plaintiff's assertion that they failed to comply with

his existing lower bunk medical restriction which lead him to fall from the top bunk and injure

himself in September 2014.  The Court also granted Plaintiff leave to file a second amended

complaint addressing deficiencies relative to, *inter alia*, a failure to train or supervise claim

against Defendants Guyton and Gilmore and a claim against Defendant Durco for fostering an

environment that encouraged sexual assaults vis-à-vis inappropriate pat-down searches by

Defendant Gibbs in October 2015.  Plaintiff, however, failed to file a second amended complaint,

and, pursuant to an Order entered on September 3, 2020, the failure to train/supervise claim

against Defendants Guyton and Gilmore and the claim against Defendant Durco alleging liability

on his part for the inappropriate pat-down searches by Defendant Gibbs were dismissed with

prejudice.  (ECF No. 98.)  As a result, the only claims remaining for summary judgment

---

[1] Because Plaintiff incorporated the allegations in his original Complaint into his Amended Complaint, the two complaints will collectively be referred to herein as his "Amended Complaint."

purposes are (1) the Eighth Amendment claim against Defendant Guyton and Gilmore for their alleged failure to comply with Plaintiff's existing lower bunk medical restriction and (2) an Eighth Amendment claim against Defendant Gibbs for sexual assault that occurred vis-à-vis inappropriate pat-down searches in October 2015.[2]  The remaining Defendants filed their Motion for Summary Judgment on January 11, 2021.  (ECF No. 107.)  Plaintiff filed his response in opposition thereto on May 12, 2021.  (ECF No. 121.)  For the following reasons, the Defendants' Motion will be granted.

**A.  <u>Factual Background</u>**

**1.  <u>Fall from top bunk</u>**

Plaintiff claims that on September 18, 2014, he was asleep on the top bunk in his cell when he fell out because it did not have a bed rail.  (ECF No. 7, p.5.)  He was transported to a hospital and received treatment.  <u>Id</u>.  Plaintiff states that he was exempt from assignment to a top bunk because of his mental defects/disorders.[3]  <u>Id</u>.  In support of this assertion, he avers that subsequent to his 2014 fall he was evaluated and housed in a handicapped cell on a lower bunk to avoid further injury.  <u>Id</u>., p.6.  He alleges liability against Defendants Gilmore and Guyton for assigning him to a top bunk despite his existing mental health restriction to the contrary.[4]  <u>Id</u>., pp.2, 9.

In support of summary judgment, Defendants have submitted the Declaration of John McAnany, a Registered Nurse Supervisor at SCI-Greene since 2003, who attests that (1) an

---

[2] Defendants did not address this claim at the motion to dismiss stage.

[3] Plaintiff asserts in his Amended Complaint that he is "semi-mentally disabled", has chronic cognitive deficit, organic brain damage and post-traumatic stress disorder.  (ECF No. 7, p.5.)

[4] Plaintiff was advised in the Court's Opinion on Defendants' Motion to Dismiss dated July 17, 2020, that he would have to submit evidence that he had a medical pass for a bottom bunk on September 18, 2014.  (ECF No. 95, p.9, Fn. 3.)

inmate would not receive bottom bunk status for mental health reasons, only for physical limitations due to a medical condition; (2) Plaintiff's records confirm that he did not have a medically mandated bottom bunk designation in September 2014; and (3) Plaintiff's cell history shows that he was actually assigned to the bottom bunk on September 18, 2014, although the assignment was not based on a medical need.  (ECF No. 110-4.)  Also in support of summary judgment, Defendants have submitted the Declaration of Michael Bell, a Grievance Officer in the Secretary's Office of Inmate Grievances and Appeals, who attests that Plaintiff has not filed any grievances to final review regarding his bunk status.  (ECF No. 110-5.)

### 2.   Sexual assault vis-à-vis pat-down search

Plaintiff alleges that he was sexually assaulted by Defendant Gibbs during the course of a pat-down search while he was working in the kitchen in October 2015.[5]  As it relates to this claim, the following facts are deemed relevant and undisputed unless otherwise indicated.

Following Plaintiff's submission of an Inmate's Request to Staff Member dated October 7, 2015, which contained serious accusations of sexual abuse against Defendant Gibbs and a request by Plaintiff that he be removed from his kitchen job before he does something to Gibbs and goes to the RHU, an investigation commenced in accordance with the Department of Corrections Policy DC-ADM 008 (Prison Rape Elimination Act, "PREA").[6]  (ECF No. 110-1.)

---

[5] The Court notes that Plaintiff's Amended Complaint appears to describe a single incident of sexual abuse by Defendant Gibbs during a pat-down search "on or around October 3, 2015."  (ECF No. 7, p.6.)  However, as will be explained herein, Plaintiff reported two incidents of sexual abuse to prison officials that occurred during pat-down searches by Defendant Gibbs on October 5 and 6, 2015.  As Plaintiff did not comply with the Court's Order dated January 11, 2021, which directed him to file a counter concise statement of facts, Defendants' Concise Statement of Undisputed Material Facts, including the fact that Plaintiff reported the abuse as occurring by the serving line in the front of Dining Hall #2 between the hours of 10:30 and 11:00 a.m. on October 5 and 6, 2015, will be deemed admitted for purposes of deciding the pending Motion for Summary Judgment.  *See* ECF No. 111, p.3 (citing Enigh v. Miller, Civil No. 08-1726, 2010 WL 2926213 (W.D. Pa. July 23, 2010)).

[6] Prior to filing this Inmate's Request to Staff Member, Plaintiff filed a Grievance dated October 3, 2015.  In the Grievance, Plaintiff stated that every time he goes to work in the kitchen he tries "not to get search[ed] by D. Gibbs" because he has a problem with Gibbs searching him.  Specifically, Plaintiff complained that Gibbs intentionally touches his "penis and nuts" during the searches.  (ECF No. 110-1, p.27.)  On October 7, 2015, Plaintiff's Grievance

Plaintiff was interviewed twice during the course of the investigation, at which time he stated that while by serving line in the front of in Dining Hall #2 on October 5, 2015 and October 6, 2015, between 10:30 and 11:00 a.m., Defendant Gibbs conducted pat searches during which time he checked Plaintiff's groin area "touching his penis and nuts" through his clothing.  Id., p.22; *see also* id., pp.10-11, 16-17, 25, 34.  Defendant Gibbs was interviewed during the investigation and denied Plaintiff's accusations of touching or grabbing Plaintiff inappropriately.  Id., pp.12, 28-29, 34.  He reported that he had written-up Plaintiff previously for trying to take items from the dining hall that were discovered during a pat search[7] and stated that he does additional pat searches on inmates working in the dining hall to prevent them from having items to pass.  Id. Inmate Blake, the second kitchen worker who worked with Plaintiff on October 5 and 6, 2015, was interviewed in connection with Plaintiff's allegations against Defendant Gibbs, and stated that although he could not recall whether Gibbs pat searched Plaintiff on those days, he did remember that Plaintiff was unhappy with Gibbs when he returned from his cell restriction after receiving the misconduct.  Id., pp.13, 35.  He also stated that Defendant Gibbs does thorough pat searches and often conducts additional pat searches after inmates report to work in the kitchen. He said that most of the inmates who work in the kitchen do not like Gibbs because "he is always doing his job," but he did not have a problem with Gibbs or his pat searches.  Id.

---

was rejected with a notification that his issue should be handled pursuant to the procedures outlined in DC-ADM 008.  Id., p.26.  It is possible that this rejection, and the notification that Plaintiff needed to follow the procedures in DC-ADM 008, the DOC's PREA policy, precipitated Plaintiff's decision to file his Inmate Request to Staff Member that same day since that policy provides that one method for reporting a PREA violation is by submitting a DC-135A, Inmate's Request to Staff Member.  *See* DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual § 12.B.4.b.

[7] The record reveals that Plaintiff received a misconduct on September 20, 2015, about two weeks prior to making the accusations against Defendant Gibbs that form the basis of this case, after Defendant Gibbs found items that Plaintiff was attempting to take from the dining hall during a pat search.  (ECF No. 110-1, pp.30-32.)

Video footage, from two different cameras, was preserved from both October 5, 2015 and October 6, 2015. (ECF No. 110-2.) The footage revealed that no pat searches were conducted by Defendant Gibbs on October 5, 2015, during the time that Plaintiff alleged to have been inappropriately searched. Id. at 10-11, 14, 18-21, 34. The footage also revealed that on October 6, 2015, Defendant Gibbs conducted a pat search, which lasted less than 10 seconds, on an individual who was not Plaintiff. Id. At the conclusion of the investigation, Plaintiff's sexual abuse allegations against Defendant Gibbs were determined to be unfounded. Id., p.1. Specifically, it was determined that contact was made to the groin area during a pat search and that pursuant to DOC policy particular attention is to be given to the groin area during a pat search. Id. As such, they found that the contact described by Plaintiff did not amount to the definition of sexual abuse because it was not "[i]ntentional contact either directly or through the clothing of or with the genitalia, anus, breast, inner thigh or the buttocks, that is unrelated to official duties." Id.

In this lawsuit, Plaintiff paints a very different picture of the pat-down search by Defendant Gibbs than that which he described to DOC officials in his Inmate Request to Staff Member and Grievance, or even in his interviews during the course of the investigation into his allegations. Indeed, Plaintiff's allegations in this lawsuit about the nature of the sexual assault appear to differ considerably from those he reported to DOC officials in writing and in interviews. Most notably, he reported to officials that he didn't like and didn't believe that Defendant Gibbs should be touching his genitals/groin area through his clothing while performing pat-down searches whereas his allegations against Gibbs in this case are significantly more salacious and reflect intentional conduct devoid of any penological purpose and undertaken with the intent to gratify sexual desire or to humiliate Plaintiff. Specifically, he alleges that

> Mr. Gibbs reached around with his hand and tore open (unfasten) Plaintiff's pants. [H]e then slid his hand down the front of Plaintiff's boxer shorts, [and] Mr. Gibbs grabbed, squeezed and fondled Plaintiff's penis and testis, (molestation and forceful masturbation), all the while Mr. Gibbs was physically pressing the front of his body up against Plaintiff's backside to the degree Plaintiff felt Mr. Gibbs erection (penis) upon his buttocks.  While in this position Mr. Gibbs began grinding his penis against Plaintiff's butt and each time Plaintiff attempted to pull away Mr. Gibbs gripped him tighter[,] and also during the sexual defiant acts Mr. Gibbs repeatedly whispered in Plaintiff's ear "stop resisting."

(ECF No. 7, pp.6-7.)  Following the filing of Defendants' Motion for Summary Judgment, which included the DOC's investigation report into Plaintiff's allegations against Defendant Gibbs and the video footage that was reviewed in connection therewith, Plaintiff stated in his response in opposition, and for the very first time in this lawsuit, and nearly five-and-a-half years after the incident was alleged to have occurred and five years after the investigation into the incident concluded, that the sexual assault that is the cause of this action occurred in a location that is off camera "adjacent to the freezer storage area."  (ECF No. 121, p.4.)  He also stated that he reported that this was the exact location of where the sexual abuse transpired, id., although the record does not reflect that he did so in either his written complaints about the incident (his Grievance, Inmate's Request to Staff Member, or written statement to the investigator) or in his two interviews with officials during the investigation.

**B.  Standard of Review**

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact.  <u>Nat'l State Bank v. Fed.l Reserve Bank of New York</u>, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing <u>Celotex</u>, 477 U.S. at 323-25).  Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Celotex</u>, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e) (1963).  *See also* <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing <u>Celotex</u>, *supra*).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In <u>Anderson</u>, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. …[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

<u>Id</u>. at 249-50 (internal citations omitted).

### C.  <u>Discussion</u>

#### 1.  <u>Defendants Gilmore and Guyton are entitled to summary judgment</u>

This Court previously wrote that "[c]laims involving failure to assign a proper bunk to accommodate an inmate's medical needs are considered conditions of confinement claims pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment."  <u>Cameron v.

Swartz, 2:17-CV-00816, 2020 WL 7496317, at *5 (W.D. Pa. Nov. 19, 2020) (citing Glazewski v. Corzine, 385 F. App'x 83, 89 (3d Cir. 2010) (treating allegations of being given a top bunk as part of a conditions of confinement claim) and Little v. Ebbert, No. 1:17-CV-01915, 2018 WL 6504201, at *4 (M.D. Pa. Dec. 11, 2018)), *report and recommendation adopted at* 2020 WL 7490229 (W.D. Pa. Dec. 21, 2020).  The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishment and "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'"  Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-67 (1984)).  To prevail on any Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively, "sufficiently serious"; and (2) "a sufficiently culpable state of mind" of the defendant official.  Id., at 834.  In prison-conditions cases, that state of mind is one of "deliberate indifference" to inmate health or safety.  Id.  Specifically, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id., at 837.

Here, the summary judgment record demonstrates that Plaintiff did not have a medically mandated bottom bunk designation in September 2014, but he was nevertheless assigned to the bottom bunk in his cell on September 18, 2014.[8]  Thus, not only did Defendants Gilmore and Guyton not assign Plaintiff to the top bunk in his cell, but they did not do so in violation of a

---

[8] It appears that it was Plaintiff's own choice to sleep on the top bunk contrary to his bed assignment.

medical restriction and there is no evidence in the record that they knew Plaintiff required a bottom bunk for his safety even absent such a medical restriction.  It logically follows then that there is no evidence in the record from which a trier of fact could find that Defendants Gilmore and Guyton knew of and disregarded an excessive risk to Plaintiff's safety.  As such, Defendants Gilmore and Guyton are entitled to summary judgment.

Alternatively, summary judgment is appropriate because Plaintiff did not exhaust his administrative remedies as to this claim.  As part of the Prison Litigation Reform Act ("PLRA"), prisoners are required to first exhaust all administrative remedies as are available prior to bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983, or any other federal law.  *See* 42 U.S.C. § 1997e(a); *see also* Porter v. Nussle, 524 U.S. 516, 524 (2002) (exhaustion also mandatory for *Bivens* suits brought by federal prisoners).  Specifically, the act provides in pertinent part as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Exhaustion is mandatory under this provision regardless of the type of relief sought and the type of relief available through administrative procedures.  *See* Booth v. Churner, 532 U.S. 731, 741 (2001).  In addition, the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter, 534 U.S. at 532.

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the

10

course of its proceedings." Id. at 90-91.  Importantly, "these procedural requirements are drawn from the policies of the prison in question rather than any free-standing federal law." Shifflett v. Korszniak, 934 F.3d 356, 364 (3d Cir. 2019); see also Drippe v. Tobelinksi, 604 F.3d 778, 781 (3d Cir. 2010) ("the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures.")

The Pennsylvania Department of Corrections ("DOC") has an official Inmate Grievance System that governs the grievance and appeals process in Pennsylvania correctional institutions. See 37 Pa. Code § 93.9.  The Inmate Grievance System is set forth in DC-ADM 804[9] and "is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate."  DC-ADM 804, Inmate Grievance System Procedures Manual § 1(A)(2).  There are three stages of grievance review provided for in DC-ADM 804:  (1) Initial Review (DC-804 § 1(C)), (2) Appeal to Facility Manager (DC-ADM 804 § 2(A)), and (3) Appeal to Final Review, which is the Secretary's Office of Inmate Grievance and Appeals ("SOIGA") (DC-ADM 804 § 2(B)).  For an inmate in a Pennsylvania DOC facility to properly exhaust his administrative remedies with respect to a claim, he must fully comply with the procedural requirements for each stage of the grievance review process.  The summary judgment record in this case, however, reveals that Plaintiff did not file any grievance to final review regarding his bunk status.  As such, Defendants Gilmore and Guyton are also entitled to summary judgment on this basis as well.

## 2.   **Defendant Gibbs is entitled to summary judgment**

The Third Circuit Court of Appeals has held that "prison sexual abuse can violate the Constitution." Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018).  Relying on the Second

---

[9] The DOC's policies and procedure manuals are found on the Pennsylvania Department of Corrections website at www.cor.pa.gov.

Circuit's holdings in two landmark prison sexual abuse cases, <u>Boddie v. Schnieder</u>, 105 F.3d 857 (2d Cir. 1997) and <u>Crawford v. Cuomo</u>, 796 F.3d 252 (2d Cir. 2015), the Third Circuit determined that "a properly stated Eighth Amendment sexual abuse claim need not necessarily depend on the number of incidents. . . 'a single incident of sexual abuse, if *sufficiently severe or serious*, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct.'" <u>Ricks</u>, 891 F.3d at 475 (quoting <u>Crawford</u>, 796 F.3d at 257) (emphasis within). The Third Circuit explained that a subjective and objective component will be used to determine the severity of the incident. <u>Id</u>. "That is, the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." <u>Id</u>. With regard to the subjective prong the Court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.'" <u>Id</u>. (internal citations omitted). Notably, "[t]he nature of the violative conduct itself will often be enough to demonstrate the prison official's culpable state of mind." <u>Id</u>. With regard to the objective prong, the court provided examples of "serious sexual contact," including "sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." <u>Ricks</u>, 891 F.3d at 478. Notwithstanding, the Third Circuit stated that it "decline[d] to craft a mechanical factors test for when sexual contact is objectively, sufficiently serious." <u>Id</u>.

Defendants maintain that based on the evidence in the record, most importantly, the video evidence, the inappropriate pat searches described by Plaintiff simply did not occur and Plaintiff has failed to meet his burden of presenting any evidence that Defendant Gibbs performed a pat search on him on the days and time that he reported, let alone one that violated his constitutional rights. As noted in the facts section of this Opinion, in his response to summary judgment,

Plaintiff states for the very first time in this lawsuit that the assault occurred in a location that was off camera so the Court should disregard the video footage that was submitted by Defendants in support of summary judgment.  Not only will the Court decline to entertain this argument because it was raised for the first time in response to the summary judgment motion,[10] the Court also notes that it was raised for the very first time nearly five-and-a-half years after the sexual assault allegedly took place and five years after the investigation into the assault concluded.  Nevertheless, even if the Court were to entertain the argument, there is nothing in the record to support Plaintiff's statement that he reported the location of the assault as being off camera "adjacent to the freezer storage area" to any official who was investigating his allegations.  Plaintiff did not report that location in either his Grievance or his Inmate Request to Staff Member, nor did he provide that location in his written statement to the investigator.  In fact,  Plaintiff actually reported in his interviews with the investigator that the assault occurred by the serving line in the front of Dining Hall #2 between the times of 10:30 and 11:00 a.m. on both October 5 and 6, 2015, and this fact is deemed admitted for purposes of deciding the summary judgment motion.  *See*, *supra*, Fn 5.  Based on what he reported, the investigators

---

[10] *See* Curtis v. Wirths, 850 F. App'x 147, 152 fn.4 (3d Cir. Mar. 4, 2021) (noting that plaintiff's claims raised for the first time in his statement of material facts were not properly before the district court); Harmon v. Sussex County, 810 F. App'x 139, 142 (3d Cir. Apr. 8, 2020) (Finding it was permissible for the district court to reject an argument on the ground that the plaintiff had not raised it in her complaint and could not amend her complaint through arguments presented in a response to the defendants' motion for summary judgment) (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); Greene v. Virgin Islands Water & Power Authority, 557 F. App'x 189, 193 (3d Cir. Feb. 11, 2014) (noting that plaintiff's arguments raised in opposition to summary judgment cannot serve as an independent basis for amendment of the pleadings) (citing Shanahan, 82 F.3d at 781)); Amboy Bancorporation v. Bank Advisory Grp., Inc., 432 F. App'x 102, 111 (3d Cir. Apr. 25, 2011) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *see also* Wasco Products, Inc. v. Southwall Technologies, Inc., 435 F.3d 989, 992 (9th Cir. 2006) (noting that the plaintiff may not rely on a new legal theory that was presented for the first time in its response to the summary judgment motion) (citing Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990) ("[T]he necessary factual averments are required with respect to each material element of the underlying legal theory . . . Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.")))

reviewed video footage of Dining Hall #2 during the times of 10:30 to 11:00 a.m. and found that the footage did not substantiate Plaintiff's allegations.  Plaintiff was aware of the fact that the video footage was reviewed and that it did not substantiate his allegations, yet he did not state at that time that the assault occurred in a different location that was off camera.  In sum, Defendants have put forth evidence showing that no sexual assault occurred vis-à-vis an inappropriate pat-down search between Plaintiff and Defendant Gibbs by the serving line in the front of Dining Hall #2 between 10:30 and 11:00 a.m. on October 5 and 6, 2015, and Plaintiff has failed to put forth or point to any evidence in the record demonstrating a genuine issue of material fact for trial.  Accordingly, Defendant Gibbs is entitled to summary judgment on Plaintiff's claim.  A separate Order will follow.

Dated: August 27, 2021.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Sameech Rawls
       JP-3087
       SCI Greene
       175 Progress Drive
       Waynesburg, PA  15370

       Counsel for Defendants
       (Via CM/ECF electronic mail)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMEECH RAWLS, | ) | |
| | ) | Civil Action No.  2:16-cv-1438 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MR. GIBBS, *Kitchen Staff Member,* | ) | |
| *SCI Greene*, MICHAEL GUYTON, | ) | |
| *Unit Manager, SCI Greene*, ROBERT | ) | |
| D. GILMORE, *Facility Manager, SCI* | ) | |
| *Greene*, MR. CUMBERLEDGE, | ) | |
| *Safety Manager, SCI Greene*, | ) | |
| CAPTAIN DURCO, *Security, SCI* | ) | |
| *Greene*, MICHAEL ZAKEN, *Deputy* | ) | |
| *Superintendent*, TRACY SHAWLEY, | ) | |
| JAYME GARDNER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 27th day of August, 2021;

**IT IS HEREBY ORDERED** that, for the reasons set forth in the accompanying

Memorandum Opinion, Defendants' Motion for Summary Judgment (ECF No. 107) is

**GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of

Defendants and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1)(A) of the Federal

Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided

by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Sameech Rawls
        JP-3087
        SCI Greene
        175 Progress Drive
        Waynesburg, PA  15370

        Counsel for Defendants
        (Via CM/ECF electronic mail)